IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| FRANK COACHMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:09-CV-427-TFM |
| MICHAEL J. ASTRUE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Following administrative denial of his application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.*, Frank R. Coachman ("Coachman") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review of this decision, it became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court AFFIRMS THE COMMISSIONER'S decision.

### I.   STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find

1

the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Coachman, age 49 at the time of the hearing, completed high school and was honorably discharged from the United States Army as a drill sergeant. Coachman's past

relevant work includes employment as a janitor, security guard, delivery driver and lawn maintenance worker. He has not engaged in substantial gainful work activity since the application date of October 1, 2005. Coachman's application claims he is unable to work because of hypertension, sleep apnia, and depression.[1]

During Coachman's administrative hearing, he described his Army career and past work as a janitor, delivery driver, security guard and lawn maintenance man. The work in lawn maintenance ended when Coachman had an argument with his supervisor over whether he could work additional hours. Coachman refused additional hours on the advice of his lawyer, who told him that accepting more work might endanger his application for disability.[2] Coachman said that he worked as a contract custodian for the U.S. Postal Service from March through November 2005, but did not win a renewal of his contract.[3] Coachman said that he "really got sick" from November 2005 through October 2006.[4]

Coachman described being diagnosed with post traumatic stress disorder (PTSD) and sleep apnea. The ALJ asked him which military experiences caused his PTSD and he said that even though he was "behind the line," he saw wounded and dead people.[5] The VA awarded him a thirty percent pension for the PTSD, which Coachman describes as something that causes him to want to hurt people when he is in a rage.[6] The ALJ noted that Coachman performed a significant amount of work despite his PTSD and that there

---

[1] R. at 156.
[2] R. at 45-46.
[3] R. at 450
[4] R. at 50.
[5] R. at 54.
[6] R. at 53-55, 72.

3

was no record of treatment for PTSD.[7]  Coachman sought psychiatric counseling two months before the hearing after not seeking treatment for "four or five years."[8]  He reported taking medication for anxiety and depression.  Coachman also reported problems with a painful ankle when he worked as a custodian, delivery driver, and security guard (standing for approximately six and one-half hours during an eight-hour shift).[9]  Coachman said that he renewed his prescription for pain medication two months before the hearing.[10]

Coachman resides with his brother and cleans house, washes his clothes, cooks, shops for groceries, and attends church.  Coachman said he was depressed after the death of his mother in 2001.  The ALJ noted that he worked several jobs since that time.[11]  Coachman claims depression makes him want to avoid people.  He reports poor results with his Continuous Positive Airway Pressure (CPAP) therapy for sleep apnea and anxiety medication.  He rates the pain in his head as an eight out of ten.[12]

The ALJ began his findings of fact by noting that Coachman's record of part-time work after his claimed onset date was a major factor in the assessment of his credibility and alleged functional limitations.  Coachman's medical records showed treatment in 2004 for poor sleep, poor concentration, and depressed mood (non-compliant with medication).[13]  Records from 2005 show treatment for hypertension, hyperlipidemia, and

---

[7] R. at 56, 76.
[8] R. at 56-57.
[9] R. at 58-59, 63.
[10] R. at 61-62.
[11] R. at 64.
[12] R. at 71.
[13] R. at 17.

sleep apnea. Non-compliance was also noted in these records.[14] An x-ray of his right ankle in June 2005 showed a mild osteophyte formation and moderate plantar spurring. An x-ray in August 2005 revealed no acute fracture.[15] In September of 2005, Coachman was instructed to take Naproxen and Extra-Strength Tylenol as needed for headache/ tension. At the time, Coachman was non-compliant with his sleep apnea regimen. In November, 2005, Coachman denied depression and reported no mental health care since 2002. Coachman denied depression again in February of 2006.[16]

Doug McKeown, Ph.D., performed a consulting psychological examination in May, 2006. Dr. McKeown noted the PTSD diagnosis, but found that condition was not mentioned in any specific symptoms. He diagnosed Coachman with mild depressive disorder and mild obsessive compulsive symptoms. He told Coachman that ongoing counseling and further evaluation of his sleep-related difficulties would be beneficial.[17]

Coachman reported to the VA on June 16, 2006, that he was doing better and sleeping 4-5 hours without interruption.[18] In November of 2006 Coachman reported his current pain rating as "0."[19] In July of 2007 Coachman reported continued discomfort in his ankle with prolonged standing and partial compliance with his CPAP.[20] The most recent medical records before the ALJ were from Coachman's semiannual visit to the VA

---

[14] R. at 18.
[15] R. at 18.
[16] R. at 18.
[17] R. at 18-19, 423
[18] R. at 19, 747.
[19] R. at 19, 736.
[20] R. at 20, 709, 715-16.

in January of 2008. He rated his pain at a seven, relieved by rest, with increasing discomfort in ankle with prolonged standing.[21]

A residual functional capacity (RFC) assessment was done by a state agency examiner on June 7, 2006.[22] The examiner found Coachman can lift and carry twenty-five pounds frequently and fifty pounds occasionally; that he can stand/walk for six hours during an eight-hour day; that he can sit for six hours during an eight-hour day; that he can occasionally climb ramps/stairs or ladders; and frequently balance, stoop, kneel, crouch and crawl. Environmental limitations include avoiding concentrated exposure to temperature extremes, fumes/odors, and hazards. A mental RFC assessment was also done on June 7, 2006 by Dr. Ellen Eno, Ph.D., a state agency psychologist.[23] Dr. Eno found Coachman has moderate limitations in the abilities to (1) understand and remember detailed instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods, and (4) respond appropriately to changes in the work setting.

A vocational expert (VE) testified during Coachman's hearing. The ALJ asked if a person restricted to medium work could perform Coachman's past relevant work (PRW) and the VE responded affirmatively.[24] Coachman's attorney asked the VE whether Coachman could perform his past work, if the ALJ found credible his testimony that he did not like to be around people. The VE did not get an opportunity to respond to this question because the ALJ explained why he did not find Coachman credible.

---

[21] R. at 21.
[22] R. at 438-445.
[23] R. at 446-48.
[24] R. at 74.

6

The ALJ found Coachman is severely impaired by sleep apnea, arthralgia right ankle and posttraumatic stress disorder with depression, but that this combination of impairments does not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.[25]  The ALJ found Coachman's RFC permitted

> "medium exertional [work] that is no more than semi-skilled.  With regard to reasoning capacity, [Coachman] has the ability to apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  [Coachman] has the ability to deal with problems involving several concrete variables in or from standardized situations."[26]

The ALJ noted that because Coachman's RFC was for medium work, he could also perform sedentary and light work.

The ALJ discussed the Eleventh Circuit pain standard, acknowledging that disability may be established where there is (1) evidence of an underlying medical condition with either (2) objective medical evidence confirming the severity of the alleged pain and/or other symptoms arising from that condition, or (3) sufficient severity of the objective medical condition that it can reasonably be expected to produce the alleged pain and/or other symptoms.  The ALJ emphasized that subjective complaints alone cannot establish disability, and that an ALJ must articulate reasons for refusing to credit a claimant's subjective testimony of pain.[27]

The ALJ discounted Coachman's claimed level of pain attributed to arthralgia in the right ankle because x-rays of the ankle were consistently interpreted as a minor abnormality, and on several occasions Coachman reported "doing well" with no

---

[25] R. at 16, 22.
[26] R. at 24.
[27] R. at 25-26.

musculoskeletal complaints. The ALJ's review of the record revealed no ongoing prescriptions for pain medication. Coachman's treating sources did not opine that he was disabled, and his part-time work as delivery driver required constant use of his right foot. The ALJ noted Coachman's testimony that he could have worked more than 24 hours per week, but declined to do so upon his attorney's advice that doing so would adversely impact his application for disability. The ALJ noted that Coachman bid unsuccessfully on a custodial contract to continue working at the Post Office despite claims of pain in his ankle. Coachman's report of his social activities shows that he does not have problems getting along with other people, visits family or friends once a week, talks on the telephone 3-4 times a week, and attends church. The decision also stated that the ALJ "considered the assessments made by the Disability Determination Services personnel regarding the claimant's ability to perform basic work activities in accordance with Social Security Ruling 96-6p and reach the same conclusion that the claimant is capable of work."[28]

Finally, the ALJ found Coachman is capable of performing past relevant work as a custodian, a delivery driver, a maintenance man, and a security guard.[29] The finding that Coachman can perform past work led the ALJ to conclude he is not entitled to disability benefits under the Act.[30]

### III.  ISSUES

Coachman raises three issues for judicial review:

---

[28] R. at 26-27.
[29] R. at 27.
[30] R. at 28. The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520 and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

1. Whether the ALJ's RFC finding is supported by substantial evidence;

2. Whether the ALJ's finding that he can return to his past relevant work is supported by substantial evidence; and

3. Whether the Appeals Council committed reversible error in failing to remand this matter to the ALJ for consideration of newly submitted evidence.

## IV.  DISCUSSION

### 1. **The ALJ's RFC finding is supported by substantial evidence.**

Coachman argues the ALJ's RFC finding that he is able to perform medium exertional work that is no more than semi-skilled is not supported by substantial evidence. The Commissioner responds that the ALJ's decision is supported by substantial evidence provided by the record as a whole.

The five-step sequential analysis set forth in regulations require that a claimant prove that he is disabled. 20 C.F.R. § 404.1512; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). Coachman's attack on the RFC finding focuses on the difference between the ALJ's assessment of his reasoning capacity and the one submitted by the reviewing State agency psychologist.[31] He argues the ALJ finding is inconsistent with the opinion from Dr. Eno, the State agency psychological consultant, who placed Coachman's reasoning level at the Dictionary of Occupational Titles (DOT) level "1" (capable of remembering and carrying out very short and simple instructions).[32] The ALJ

---

[31] Coachman challenges the ALJ's finding that he is physically able to perform medium work, but does not cite any specific document or record which indicates otherwise. Pl. Br. at 9.  The Court agrees with the Commissioner's argument that no medical source placed any physical limitations on Coachman, or found him disabled for any reason.

[32] R. at 448; Pl. Br. at 8, n.8.

9

found Coachman's reasoning level "3" (capable of applying commonsense understanding to instructions furnished in written, oral, or diagrammatic form).[33] The opinion by Dr. Eno found Coachman is capable of work, though moderately limited in his ability to understand, remember, and carry out detailed instructions.[34] Thus, the issue before the Court is whether the ALJ supported his findings which conflict with Dr. Eno's evaluation of Coachman's record.

The ALJ stated that he considered the entire record in determining Coachman's reasoning capacity before assigning a level of functioning that encompassed Coachman's past work. The record provided "very little information suggesting significant indicators for a mental health-related difficulty. Indeed, the record reveals, and in his sworn testimony, [Coachman] acknowledged that even with diagnoses of posttraumatic stress disorder and depression, he was able to work full-time as a custodian."[35] The ALJ continued by noting Coachman's testimony that he could have worked full time as a security guard, maintenance man, or delivery driver but for his lawyer's advice that working 40 hours a week would negatively impact his disability application.

In addition to Coachman's testimony, post-onset health records from November, 2005 and February, 2006, show he denied depression and had not received mental health care since 2002. Dr. McKeown's consulting examination produced a diagnosis of mild depressive disorder and mild obsessive compulsive symptoms. Dr. McKeown noted Coachman's PTSD diagnosis, but he found that condition was not mentioned in any

---

[33] R. at 24, Pl. Br. at 8, n.8.
[34] R. at 446.
[35] R. at 24.

specific symptoms. Coachman reported no ongoing mental health treatment other than through the Veteran's Administration.

The record supports the ALJ's decision that Coachman is able to perform at the level of reasoning indicated in the administrative decision. Coachman's argument confuses the ALJ's consideration of the State agency mental health opinion with adoption of the opinion in every detail. It is clear from the record that the ALJ considered the entire record, which contained reliable evidence which conflicted with the State agency opinion. Accordingly, the Court finds no error as to this issue.

### 2. The ALJ properly found Coachman can perform his past relevant work.

Coachman argues the ALJ's finding that he can perform his past work is not based on substantial evidence. The Commissioner responds that Coachman did not meet his burden of proving an inability to perform his past work. The Commissioner also concedes that Coachman did not work as a lawn maintenance worker long enough for that occupation to be considered "past work."[36] Therefore, the remaining occupations cited by the ALJ – custodian, delivery driver, and security guard – are the relevant jobs at issue in this case.

Coachman claims that two errors are incorporated into the ALJ's decision. The first is that the hypothetical posed to the VE did not include the specific functional limitations the ALJ found to exist, and the VE's response is therefore not supported by substantial evidence. "[I]n order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's

---

[36] Def. Br. at 11.

11

impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004), quoting *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). If the ALJ had cited the VE's testimony to support his ultimate finding that certain jobs are within Coachman's ability, remand would be appropriate. However, as noted by the Commissioner and confirmed by the record, the ALJ relied upon the VE's testimony only for purposes of classifying Coachman's past work and exertion levels.[37] The ALJ is not required to obtain VE testimony to determine whether a claimant can return to his past relevant work. *See Lucas v. Sullivan,* 918 F.2d 1567, 1573 n.2 (11th Cir. 1990); *see also* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). Therefore, there is no error in the ALJ's reliance on the VE's testimony for the limited purposes noted above.

The second error cited by Coachman is that the ALJ did not consider the physical and mental demands of his past work. Coachman cites SSR 82-62 as grounds for error, arguing that the policy ruling requires that an ALJ who finds a claimant can perform past work must identify the physical and mental demands of the past job/occupation. The Commissioner responds that the ALJ fully complied with SSR 82-62 when he relied upon the DOT description of these jobs as they are generally performed in the national economy.[38] Further, the record shows the ALJ asked Coachman about the physical demands of his past work for all three of the remaining occupations.[39] Coachman's responses about the exertional demands are therefore in the record and permitted the ALJ to determine whether the physical requirements are within his RFC. Coachman also said

---

[37] R. at 28; 74-75.
[38] R. at 28; 74-75.
[39] R. at 47-50, 58-63.

12

that he does not use a cane, and was not taking pain medication when working these jobs, despite his claim that his ankle was a source of significant pain.[40] This information was used by the ALJ to determine Coachman is able to perform his past work as generally performed. The Commissioner also notes that SSR 82-62 specifically provides that the DOT can provide supplemental information on skill level and exertional demands of a job. The ALJ compared Coachman's RFC with the demands of these jobs and found no inconsistencies.[41]

The record supports the ALJ's reliance on the Coachman's own testimony and the DOT information on physical requirements to find he is capable of performing his past work as a custodian, delivery driver, or security guard, and there is no reversible error as to this issue.

### 3. **The Appeals Council did not err by failing to remand the case back to the ALJ for consideration of additional medical evidence.**

Coachman argues the Appeals Council should have remanded his case upon its review of updated physical and mental health records. The Commissioner responds that the Appeals Council did not err because the additional records were not material and would not have changed the administrative result.

Coachman submitted VA Medical Center records from January 2008- January 2009; Southeast Alabama Medical Center records from January 17, 2008; and records from Dr. Hicks (psychologist) from March/April 2008. The VA records gave additional

---

[40] R. at 60-63.
[41] The Court notes that the ALJ's concluding paragraph as to past work is clearly not applicable to Coachman, but to some other claimant. However, the decision clearly lists Coachman's past work as a custodian, delivery driver, and security guard as occupations within his RFC. R. at 27-28.

13

background on the source of Coachman's PTSD claim, documented additional problems with thoughts of hurting someone, short temper, sweats, low back pain, itching, tremors, leg cramps, and muscle pain.  Seroquel and Zocor were discontinued as possible causes of the tremors, leg cramps, and muscle pain.  Dr. Hicks noted on March 17, 2008, that Coachman had not been seen since 2002.  Coachman reported auditory hallucinations, visions of random people he wants to hurt, and depression.  Dr. Hicks opined that Coachman is disabled due to severe depression on April 28, 2008.  The Appeals Council denied review without stating any specific reason for its decision, though one of the possible reasons listed for granting review is the receipt of "new and material evidence and the decision is contrary to the weight of all the evidence now in the record."[42]

Coachman argues the new evidence may well have changed the ALJ's review of the record because it provides objective evidence of his ankle pain and additional detail of the PTSD claim.  Coachman acknowledges that when the record was reviewed by the ALJ, there was no opinion from any physician which found him disabled, and believes the statement from Dr. Hicks would have changed the ALJ's decision.  Coachman argues the Council's failure to return the record for ALJ consideration, and the failure to state a specific reason for denying review, are both grounds for remand by this Court.

The Commissioner argues that Coachman does not meet the standard for remand upon his claim of error by the Appeals Council.  In *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998), the Eleventh Circuit held that evidence submitted to the Appeals Council justifies a remand where a plaintiff shows "that (1) new, noncumulative evidence exists,

---

[42] R. at 1.

(2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level." *Falge*, 150 F.3d at 1323. The Commissioner concedes the first *Falge* criteria and acknowledges that the evidence submitted is new and not merely cumulative. Instead, he argues the second criteria, *i.e.,* material evidence which creates a reasonable possibility that the administrative result would change, is not present.

The Commissioner supports his argument with the observation that Coachman's psychiatric complaints increased after the ALJ's April 2008 decision. The ALJ asked Coachman during the administrative hearing what specific incidents triggered his PTSD, and Coachman's reply was, essentially, that he had seen wounded and dead soldiers. Coachman's brief highlights medical records from 2009 which state Coachman feared for his life during training exercises and a convoy mission.[43] The new evidence also notes a worsening of Coachman's PTSD in December, 2007, and attributes a workplace argument, and subsequent firing, to that condition.[44] Coachman's testimony before the ALJ showed that the argument occurred when Coachman was replaced by another worker because he refused to work more than 24 hours per week on the advice of his lawyer.[45] Finally, less than two weeks after the administrative hearing, and six years after last seeking mental health care, Coachman reported auditory hallucinations and "visions of

---

[43] R. at 941.
[44] Pl. Br. at 14; R. at 942.
[45] R.at 44-46.

15

random people he wants to hurt" to Dr. Hicks.[46] The Court notes that these reports arose only after the ALJ found Coachman was not credible on the issues of his pain and PTSD as grounds for disability.[47] The opinion from Dr. Hicks would therefore be less persuasive to the ALJ, and less likely to serve as grounds for a different result, where the ALJ vehemently stated that Coachman's record showed an ability to work through the ankle pain without medication, and no stressors or treatment for PTSD. *See Weetman v. Sullivan,* 877 F.2d 20, 23 (9th Cir. 1989).

The Court finds that the new evidence was not likely to change the administrative result if the Appeals Council had remanded the case for additional consideration by the ALJ. Therefore, the evidence is not "material" as contemplated by the Eleventh Circuit in *Falge*. Further, the Court adopts the Commissioner's argument that the Appeals Council is not required to explain the reason(s) it denied review. *See* 20 C.F.R. §§ 404.967, 416.1467 (conferring discretion to Appeals Council to deny review without explanation). Thus, there is no error in the denial of review by the Appeals Council, or the decision not to remand to the ALJ for further consideration of the new evidence.

## V. CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment is entered herewith.

---

[46] Pl. Br. at 14-15.
[47] R. at 75-77.

DONE this 20th day of September, 2010.

>/s/ Terry F. Moorer
>TERRY F. MOORER
>UNITED STATES MAGISTRATE JUDGE